KELLEY DRYE & WARREN LLP
  Kimberly Carter (State Bar No. 221283)
  Ronnie Arenas (State Bar No. 309674)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:   (213) 547-4900
Facsimile:   (213) 547-4901
KCarter@KelleyDrye.com
RArenas@KelleyDrye.com

Attorneys for Defendants
LABCORP PERI-APPROVAL AND
COMMERCIALIZATION, INC.; and
COVANCE MARKET ACCESS SERVICES,
INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA URIAS, individually, and on behalf of all others similarly situated, | Case No. **'23CV1815 L     MSB** |
| Plaintiff, | |
| v. | **DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S NOTICE OF REMOVAL OF ACTION** |
| LABCORP PERI-APPROVAL AND COMMERCIALIZATION INC., an unknown entity; COVANCE MARKET ACCESS SERVICES, INC., a corporation; COVANCE INC., a corporation; and DOES 1 through 10, inclusive, | [Filed concurrently with Civil Cover Sheet; Declaration of L. Presher; Declaration of Ronnie Arenas; Corporate Disclosure Statement and Notice of Interested Parties] |
| Defendants. | Action Filed:   June 30, 2023<br>Trial Date:      None set |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Labcorp Peri-Approval and Commercialization, Inc.[1] (rebranded as Fortrea Patient Access Inc. and referred to herein as "Defendant") hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of San Diego, to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). Accordingly, removal is proper based on the following grounds:

## I.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1446 ARE SATISFIED

1.    <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the United States District Court for the district and division in which the action is pending. The Superior Court of California for the County of San Diego is located within the Southern District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Southern District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

2.    <u>Timeliness of Removal</u>. Defendant waived formal service of process. On August 11, 2023, Plaintiff's counsel forwarded the Summons and Complaint to Defendant's counsel. Defendant had not received the Complaint prior to August 11, 2023. Defendant executed a written acknowledgment of receipt on September 12, 2023. Therefore, Defendant is deemed to have been served on September 12, 2023. Cal. Civ. Proc. Code § 415.30(c). A true and correct copy of the two Notice and

---

[1]    As part of a corporate spinoff, Labcorp Peri-Approval and Commercialization Inc. was rebranded to Fortrea Patient Access Inc., effective midnight June 30, 2023.

Acknowledgment of Receipt are attached as **Exhibit "H" and "I."** This Notice of Removal is timely as it is filed within thirty (30) days of the date that Defendant is deemed to be served. 28 U.S.C. § 1446(b). Per the Declaration of Ronnie Arenas filed concurrently, **Exhibits "A" through "I"** attached to this Notice of Removal are true and correct copies of all pleadings, process, and orders filed with the San Diego Superior Court for Case No. 37-2023-00027719-CU-OE-CTL.

3.    As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders served on it in this action. Defendant has not been served with any pleadings, process, or orders besides those attached.

4.    In accordance with 28 U.S.C. § 1446(d), Defendant will promptly give written notice to Plaintiff of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of San Diego. Further, in accordance with Federal Rule of Civil Procedure 7.1 and Southern District of California Local Rule 40.2, Defendant concurrently files its Notice of Party with Financial Interest.

## II.    BACKGROUND

5.    On or about June 30, 2023, Plaintiff Andrea Urias ("Plaintiff") filed a Class Action Complaint (the "Complaint") against Defendant in the Superior Court of the State of California, County of San Diego entitled *Andrea Urias v. Labcorp Peri-Approval and Commercialization Inc., Covance Market Access Services, Inc., Covance Inc., et al.* The Complaint was assigned Case No. 37-2023-00027719-CU-OE-CTL. A true and correct copy of the Complaint and Summons are attached hereto as **Exhibits "A" and "B,"** respectfully.

6.    The Complaint asserts the following claims for relief against Defendant: (1) Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§

226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7); (5) Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); (6) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); (7) Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802); and (8) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.).

## III.    FEDERAL JURISDICTION EXISTS PURSUANT TO THE CLASS ACTION FAIRNESS ACT

7.    Pursuant to 28 U.S.C. §§ 1441 and 1453, this Court has original jurisdiction over this action. The number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6). As such, Defendant may remove the matter under CAFA.[2]

### a.  The Size of the Putative Class Exceeds 100

8.    In this action, Plaintiff defines the proposed class as: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." [3]

9.    Plaintiff fails to allege the size of the putative class in the Complaint. Defendant's employment records indicate that between January 3, 2019 and June 30, 2023, Defendant employed 640 different non-exempt employees in California during this time period.

10.    Based on the foregoing, the proposed class includes at least 640 members, thereby satisfying the first element of CAFA jurisdiction.

---

[2]    An action may be removed by a single defendant under CAFA without the consent of the other defendants. *See* 28 U.S.C. § 1453(a).

[3]    Complaint, ¶ 24.

**b. The Parties are Diverse**

11.     Plaintiff and the members of the putative class are citizens of a different state than Defendant. 28 U.S.C. §§ 1332(c)(1) & (d)(2).

12.     Defendant is now and was at the time of the filing of this action, a citizen of a State <u>other than</u> California within the meaning of 28 U.S.C. section 1332(c)(1).

13.     <u>Citizenship of Defendant</u>. Defendant is a citizen of Delaware and North Carolina. For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

14.     The United States Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *Hertz Corp. v. Friend,* 559 U.S. 77 (2010), holding that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92-93.

15.     Defendant was at the time of the filing of this action, and still is, incorporated under the laws of the State of Delaware. Defendant's company headquarters and its principal place of business are located in Durham, North Carolina, where the Company's officers direct, coordinate, and control its business operations. Defendant's highest-ranking employees are all located in Durham, North Carolina. Defendant conducts the majority of its administrative functions such as payroll, legal, tax, benefits, and accounting at its corporate headquarters in Durham, North Carolina. Moreover, the majority of the administrative functions crucial to Defendant's day-to-day operations are conducted in Durham, North Carolina. Therefore, Defendant is a citizen of Delaware and North Carolina.

16.     <u>Citizenship of Plaintiff and putative class members.</u> For diversity

purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). A person's "domicile is evaluated in terms of 'objective facts,"' and "courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986). For diversity purposes, an individual's domicile is "her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter,* 265 F.3d at 857. "[T]he existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Lew,* 797 F.2d at 750.

17.     The Complaint states that Plaintiff is a citizen of California.[4] Further, at all times relevant to this action, Plaintiff has resided and been domiciled in the State of California.[5] As such, Plaintiff is a citizen of California.

18.     Members of the proposed class, who by definition are or were employed in California[6], are presumed to be primarily citizens of the State of California. *See, e.g., Lew,* 797 F.2d at 750 ("place of employment" an important factor weighing in favor of citizenship).

19.     Accordingly, because Defendant is a citizen of Delaware and North

---

[4]     Complaint, ¶ 7 ("Plaintiff ANDREA URIAS is a resident of San Diego County, California who worked for Defendants in San Diego County, California as an hourly-paid, non-exempt employee from approximately February 2019 to approximately July 2022.").

[5]     *Id.*

[6]     Complaint, ¶ 24.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

Carolina and Plaintiff – along with the putative class members – is a citizen of California, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

**c.  The Amount in Controversy Exceeds $5,000,000**

20.     To remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000. 28 U.S.C.S. § 1332(d). It is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC,* No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

21.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez,* 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles,* 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.,* No. C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz,* 2007 WL 1302504, at *3.

22.     Defendant does not concede in any way that the allegations in the Complaint are accurate, nor does Defendant concede that Plaintiff's claims are

amenable to class-wide treatment. In fact, Defendant denies the validity of Plaintiff's claims, and further denies that Plaintiff or the purported class are entitled to any of the requested relief. Nonetheless, the allegations in the Complaint show it is more likely than not, as pled, that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino,* 506 F.3d at 700.

23.    As will be described in detail further below, as pled, the amount in controversy set forth in the Complaint clearly exceeds the jurisdictional minimum of $5,000,000.

### 1.  Defendant's Conservative Estimate of the Amount Placed in Controversy by Plaintiff Exceeds the Jurisdictional Amount

24.    In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate of the amount in controversy as a result of Plaintiffs' claims for: (1) Failure to Pay Minimum and Straight Time Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Periods; (5) Failure to Timely Pay Final Wages at Termination; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Indemnify Employees for Expenditures; (8) Unfair Business Practices; and (9) Attorneys' Fees, as follows:

| Claim | Amount in Controversy |
|---|---|
| Failure to Pay Minimum and Straight Time Wages | $2,244,158.28 |
| Failure to Pay Overtime Wages | $5,049,356.13 |
| Failure to Provide Meal Periods | $4,488,316.56 |
| Failure to Authorize and Permit Rest Periods | $4,488,316.56 |
| Failure to Timely Pay Final Wages at Termination | $2,323,262.40 |
| Failure to Provide Accurate Itemized Wage Statements | $1,088,850.00 |
| Failure to Indemnify Employees for Expenditures | $499,590.00 |
| Attorneys' Fees | $4,036,369.99 |

| TOTAL | $24,218,219.92 |
|---|---|

These amounts *do not* include applicable liquidated damages or interest accrued, which Plaintiff also demands in the Complaint. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include an additional analysis of the amounts placed in controversy by Plaintiff's allegation of unlawful and unfair business practices (Eighth Cause of Action). If necessary, Defendant could and would supplement this Notice of Removal to include an estimate of the additional amount in controversy based on this allegation.

25.    As detailed below, relying on conservative methodology and necessary assumptions, the amount in controversy in this matter, as a result of the first four causes of action alleged in the Complaint and the accompanying attorney's fees, is at least **$24,218,219.92**.

### a. Plaintiff's Claim for Failure to Pay Minimum and Straight Time Wages Places At Least $2,244,158.28 In Controversy.

26.    In the First Cause of Action, Plaintiff alleges that Defendant knowingly failed to pay to Plaintiff and the putative class for all hours worked. As such, Plaintiff alleges that she and the putative class are entitled to recover minimum and straight time wages for all non-overtime hours worked. [7]

27.    The Complaint does not allege how many non-overtime hours were worked by the various putative class. However, it is reasonable for purposes of removal to assume an average of 1 uncompensated non-overtime hours per week for each member of the putative class. This assumes that employees can suffer a 30 minute violation per day and each employee suffered two violations per week (2 out of 5 days). *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020)

---

[7] Complaint, ¶ 37.

Case No.
DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

(Court finds that a violation rate of 40%—a median between 25% and 60%—is reasonable.).

28.    The statute of limitations to recover unpaid wages under California Labor Code section 203(a) is three years. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e., 234 weeks or 117 pay periods). [8]

29.    Based on Defendant's records, it employed on average 427 employees during the time period between January 3, 2019 and June 30, 2023. These 427 non-exempt employees worked a cumulative total of 99,918 weeks during this time period, determined as follows (427 workers x 234 weeks) = 99,918 work weeks.

30.    Based on Defendant's records, the average hourly rate for Plaintiff and the putative class members is $22.46 during the time period between January 3, 2019 and June 30, 2023.

31.    <u>Conservative Estimate of Unpaid Non-Overtime Hours Based On the Average Hourly Rate.</u> Assuming 1 uncompensated non-overtime hours per week per putative class member, the estimated amount in controversy for Plaintiff's unpaid non-overtime claim is at least **$2,244,158.28**, determined as follows: ($22.46/hour x 1 hour/week x 99,918 work weeks) = **$2,244,158.28**.

32.    For the reasons set forth above, and applying the conservative approach of an average hourly rate, the unpaid wages for the failure to pay

---

[8]    Complaint, ¶¶ 24 & 95.

minimum and straight time wages alleged in the First Cause of Action, by itself, places an estimated **$2,244,158.28** in controversy.

### b. Plaintiff's Claim for Failure to Pay Overtime Wages Places At Least $5,049,356.13 In Controversy.

33.    In the Second Cause of Action, Plaintiff alleges that Defendant failed to pay Plaintiff and the putative class for all overtime hours worked. As such, Plaintiff alleges that she and the putative class are entitled to additional premium rate compensation. [9]

34.    The Complaint does not allege how many overtime hours were worked by the various putative class. However, it is reasonable for purposes of removal to assume an average of 1.5 uncompensated overtime hours per week for each member of the putative class. This can be accomplished through a variety of scenarios, which include missed meal period, clocking-in early, or clocking-in late.

35.    The statute of limitations to recover unpaid wages under California Labor Code section 203(a) is three years. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e., 234 weeks or 117 pay periods). [10]

36.    Based on Defendant's records, it employed on average 427 employees

---

[9]    Complaint, ¶ 45-46.

[10]    Complaint, ¶¶ 24 & 95.

during the time period between January 3, 2019 and June 30, 2023. These 427 non-exempt employees worked a cumulative total of 99,918 weeks during this time period, determined as follows (427 workers x 234 weeks) = 99,918 work weeks.

37.    Based on Defendant's records, the average hourly rate for Plaintiff and the putative class members is $22.46 during the time period between January 3, 2019 and June 30, 2023.

38.    <u>Conservative Estimate of Unpaid Overtime Hours Based On the Average Hourly Rate.</u> Assuming 1.5 uncompensated overtime hours per week per putative class member, the estimated amount in controversy for Plaintiff's unpaid overtime claim is at least **$5,049,356.13**, determined as follows: ($22.46/hour x 1.5 overtime premium) x 1.5 hours/week x 99,918 work weeks) = **$5,049,356.13**.

### c. Plaintiff's Claim for Failure to Provide Meal Periods Places At Least $4,488,316.56 In Controversy.

39.    In the Third Cause of Action, Plaintiff alleges that Defendant failed to provide Plaintiff and the putative class with meal periods as required by California law. As such, Plaintiff alleges that she and the putative class are entitled to one hour of premium wages for each workday they were not provided a meal period. [11]

40.    The statute of limitations to recover penalties under California Labor Code section 203(a) is three years, the same limitations period as an action for the wages from which the penalties arise. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to

---

[11]    Complaint, ¶ 53-54.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e., 234 weeks or 117 pay periods). [12]

41.    Based on Defendant's records, it employed on average 427 employees during the time period between January 3, 2019 and June 30, 2023. These 427 non-exempt employees worked a cumulative total of 99,918 weeks during this time period, determined as follows (427 workers x 234 weeks) = 99,918 work weeks. As such, they worked a cumulative total of 499,590 work days, determined as follows: (99,918 work weeks x 5 work days/work week = 499,590). Additionally, these non-exempt employees each worked at least 5 hours per day, which triggers the meal period requirements of the applicable IWC Wage Orders and California Labor Code section 226.7.

42.    Based on Defendant's records, the average hourly rate for Plaintiff and the putative class members is $22.46 during the time period between January 3, 2019 and June 30, 2023.

43.    The IWC's wage orders indicates that employees are entitled to an unpaid 30-minute meal period after working for five hours. *See* Cal. Code Regs., tit. 8, § 11090, subds. 11(A) & 12(B).

44.    The wage orders indicates that "[i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." Cal. Code Regs., tit. 8, § 11090, subd. 11(D).

45.    <u>Conservative Estimate of Penalties for Missed Meal Periods Based On the Average Hourly Rate.</u> Based on the number of shifts requiring a meal period for non-exempt employees in California during the relevant period, the estimated

---

[12] Complaint, ¶¶ 24 & 95.

amount in controversy for Plaintiff's claim for missed meal periods is at least **$4,488,316.56,** determined as follows: ($22.46/hour x 499,590 shifts x 40%) = **$4,488,316.56**. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (Court finds that a violation rate of 40%—a median between 25% and 60%—is reasonable.).

46.    For the reasons set forth above, and applying the conservative approach of an average hourly rate, the penalties for the meal period violations alleged in the Second Cause of Action places, at a minimum, **$4,488,316.56** in controversy.

### d.  Plaintiff's Claim for Failure to Provide Rest Periods Places At Least $4,488,316.56 In Controversy.

47.    In the Fourth Cause of Action, Plaintiff alleges that Defendant failed to authorize Plaintiff to take rest breaks. As such, Plaintiff alleges that she is entitled to one hour of premium wages for each workday she was not provided a rest break. [13]

48.    The statute of limitations to recover penalties under California Labor Code section 203(a) is three years, the same limitations period as an action for the wages from which the penalties arise. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e.,

---

[13]    Complaint, ¶ 57-58.

234 weeks or 117 pay periods). [14]

49.    Based on Defendant's records, it employed on average 427 employees during the time period between January 3, 2019 and June 30, 2023. These 427 non-exempt employees worked a cumulative total of 99,918 weeks during this time period, determined as follows (427 workers x 234 weeks) = 99,918 work weeks. As such, they worked a cumulative total of 499,590 work days, determined as follows: (99,918 work weeks x 5 work days/work week = 499,590). Additionally, these non-exempt employees each worked at least 5 hours per day, which triggers the rest period requirements of the applicable IWC Wage Orders and California Labor Code section 226.7.

50.    Based on Defendant's records, the average hourly rate for Plaintiff and the putative class members is $22.46 during the time period between January 3, 2019 and June 30, 2023.

51.    The IWC's wage orders indicates that employees are entitled to a 10-minute rest period per four hours of work. *See* Cal. Code Regs., tit. 8, § 11090, subds. 11(A) & 12(B).

52.    The wage orders indicates that "[i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." *Id.*, subd. 12(B).

53.    <u>Conservative Estimate of Penalties for Missed Rest Periods Based On the Average Hourly Rate.</u> Based on the number of shifts requiring a rest period for non-exempt employees in California during the relevant period, the estimated amount in controversy for Plaintiff's claim for rest periods is at least **$4,488,316.56,** determined as follows: ($22.46/hour x 499,590 shifts x 40%) = **$4,488,316.56**. *See*

---

[14]    Complaint, ¶¶ 24 & 95.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

*Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (Court finds that a violation rate of 40%—a median between 25% and 60%—is reasonable.).

54.    For the reasons set forth above, and applying the conservative approach of an average hourly rate, the penalties for the rest period violations alleged in the Third Cause of Action places, at a minimum, **$4,488,316.56** in controversy.

### e.  Plaintiff's Claim for Failure to Pay All Wages Owed At Termination Places At Least $2,323,262.40 In Controversy.

55.    In the Fifth Cause of Action, Plaintiff alleges that Defendant willfully failed to pay Plaintiff all wages owed at termination. As such, Plaintiff alleges that she is entitled to penalty wages from termination, and at the same rate until paid or until an action is commence, for up to thirty (30) days. [15]

56.    The waiting time penalty is measured at the employee's daily rate of pay and is calculated by multiplying the daily wage by the number of days that the employee was not paid, up to a maximum of 30 days. Cal. Lab. Code § 203(a).

57.    The statute of limitations to recover penalties under California Labor Code section 203(a) is three years, the same limitations period as an action for the wages from which the penalties arise. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e.,

---

[15]    Complaint, ¶¶ 63-64.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

234 weeks or 117 pay periods).[16]

58.    <u>Putative Waiting Time Penalties.</u> Based on Defendant's records, Defendant employed 431 non-exempt employees from January 3, 2019 to June 30, 2023 who are no longer employed by Defendant and have not been employed by Defendant in at least thirty days prior to this filing.

59.    <u>Conservative Estimate of Waiting Time Penalties Based On At Least One Violation</u>. Accordingly, assuming that each of the 431 non-exempt employees experienced at least one meal or rest period violation and/or any unpaid wages for hours worked during his or her employment, then each Associate was not paid all wages due at the time of termination. Accordingly, the waiting time penalties are triggered only once for each putative class member, at the conclusion of their employment with Defendant. Using the average daily rate of the non-exempt employees, which is $179.68 ($22.46/hour x 8 hours), those non-exempt employee would allegedly be entitled to recover waiting time penalties in the amount of: **$2,323,262.40** ($179.68 x 30 days x 431 non-exempt employees = **$2,323,262.40**).

60.    For the reasons set forth above, and applying the most conservative assumptions, the Fifth Cause of Action places, at a minimum, **$2,323,262.40** in controversy. The true amount placed in controversy is likely much higher.

**f.  Plaintiff's Claim for Failure to Properly Itemize Wage Statements Places At Least $1,088,850.00 In Controversy.**

61.    In the Sixth Cause of Action, Plaintiff alleges that Defendant failed to provide her with complete and accurate wage statements. As such, Plaintiff alleges that she is entitled to actual damages or a $4,000 penalty, which ever is greater.[17] For purposes of removal, it is reasonable to assume that all of the wage statements issued to Plaintiff and the putative class were inaccurate.

---

[16]    Complaint, ¶¶ 24 & 95.

[17]    Complaint, ¶¶ 68-72.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

62.     The applicable penalty for this violation is $50.00 for the initial pay period in which a violation occurs and $100.00 for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars. Cal. Lab. Code § 226(e).

63.     The statute of limitations to recover penalties under California Labor Code section 226(e) is one year. Cal. Civ. Proc. Code § 340(a). Based on Defendant's records, it employed on average 427 employees during the time period between January 3, 2019 and June 30, 2023. As such, Defendant employed at least 427 non-exempt employees from June 30, 2022 to June 30, 2023, who received an average of 26 wage statements[18] during that time period.

64.     Assuming a $50.00 penalty for the initial violation and $100.00 penalty for any violation thereafter (capped at $4,000), based on the average number of wage statements each putative class member received between June 30, 2022 to June 30, 2023, the amount of potential wage statement penalties is **$1,088,850.00**, determined as follows: ((427 Non-Exempt Employees) x ($50.00 penalty x 1 inaccurate wage statement)) + (427 Non-Exempt Employees) x ($100 penalty x 25 inaccurate wage statements)) = $1,088,850.00.)

65.     For the reasons set forth above, the Sixth Cause of Action places **$1,088,850.00** in controversy.

### g. Plaintiff's Claim for Failure to Indemnify Employees for Expenditures Places At Least $499,590.00 In Controversy.

66.     In the Seventh Cause of Action, Plaintiff alleges that she was required to incur substantial necessary expenditures and losses in direct consequence of the discharge of her duties. As such, Plaintiff alleges that she is entitled to the amounts of the expenses she paid. [19] For purposes of removal, it is

---

[18]    Non-exempt employees are paid bi-weekly.

[19]    Complaint, ¶¶ 74-78.

reasonable to assume that Plaintiff and the putative class incurred at least $5 of necessary expenditures and losses on a weekly basis during the scope of their employment.

67.    The statute of limitations to recover penalties under California Labor Code section 203(a) is three years, the same limitations period as an action for the wages from which the penalties arise. Cal. Lab. Code § 203(b); *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1114 (2007) (three-year limitations period for wage violations, including meal and rest period violations). However, Plaintiff alleges that pursuant to California Business & Professions Code §§ 17200, *et seq.*, and Judicial Council of California's Emergency Rule 9(a) (California Rules of Court), Plaintiff and the putative class are entitled to restitution of the wages withheld and retained by Defendant during a period that commences four years and 178 days prior to the filing of this Complaint (i.e., 234 weeks or 117 pay periods). [20]

68.    Based on Defendant's records, it employed on average 427 employees during the time period between January 3, 2019 and June 30, 2023. These 427 non-exempt employees worked a cumulative total of 99,918 weeks during this time period, determined as follows (427 workers x 234 weeks) = 99,918 work weeks.

69.    <u>Conservative Estimate of Unpaid Expenditures.</u> Assuming $5.00 of unpaid expenditures per week per putative class member, the estimated amount in controversy for Plaintiff's unpaid expenditures claim is at least **$499,590.00**, determined as follows: ($5 x 99,918 work weeks) = **$499,590.00**.

70.    For the reasons set forth above, the Seventh Cause of Action places **$499,590.00** in controversy.

### h.  Attorneys' Fees

71.    In addition to the amounts put in controversy by each of the causes of

---

[20]    Complaint, ¶¶ 24 & 95.

DEFENDANT LABCORP PERI-APPROVAL AND COMMERCIALIZATION, INC.'S
NOTICE OF REMOVAL OF ACTION

action alleged in the Complaint, Plaintiff will also be entitled to attorney's fees if successful, as the relevant provisions of the Labor Code provide for an award of attorney's fees to a prevailing plaintiff. Cal. Civ. Proc. Code § 1021.5, Cal. Lab. Code § 226(e). Indeed, Plaintiff expressly requests such fees in his prayer for relief.[21]

72.    "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass 'n,* 479 F.3d 994, 1000 (9th Cir. 2007). For purposes of calculating the amount in controversy in CAFA removals, courts assume attorney's fees of at least 25% of the total award to the class. *See, e.g., Altamirano,* 2013 WL 2950600 at * 13; *Heejin Lim v. Helio, LLC,* No. CV 11-9183 PSG PLAX, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012).

73.    Using a conservative assumption that attorneys' fees would only be awarded as to Plaintiff's claims for unpaid overtime, unpaid meal and rest period penalties, waiting time penalties, and itemized wage statement penalties, Defendant calculates attorneys' fees of at least **$4,036,369.99** (($2,244,158.28  [unpaid non-overtime] + $5,049,356.13 [unpaid overtime] + $4,488,316.56 [meal period premiums] + $4,488,316.56 [rest period premiums] + $2,323,262.40 [waiting time penalties] + $1,088,850.00 [inaccurate wage statement penalties] + $499,590.00 [unpaid expenditures]) x 0.2). *See Burns v. Gymboree Operations, 2007 Cal. Super. LEXIS 6088 * (Cal. Super. Ct. Sept. 19, 2007)* (approving $500,000 in attorneys' fees on a settlement of $1,500,000 for a wage and hour class action).

### 2.  Summary of Defendant's Conservative Calculations

74.    As detailed above, a reasonable and conservative estimate of the total amount in controversy, based on each of the categories listed above, is at least

---

[21]    Complaint, Prayer For Relief.

**$24,218,219.92** ($2,244,158.28 [unpaid non-overtime] + $5,049,356.13 [unpaid overtime] + $4,488,316.56 [meal period premiums] + $4,488,316.56 [rest period premiums] + $2,323,262.40 [waiting time penalties] + $1,088,850.00 [inaccurate wage statement penalties] + $499,590.00 [unpaid expenditures] + $4,036,369.99 [attorneys' fees]). Although Defendant specifically denies that the case is suitable for class certification, that Plaintiff's claims have merit, and that Plaintiff or the putative class members will recover any of the relief they seek, it is clear on the face of the Complaint that the amount in controversy exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV.    REQUEST FOR SUPPLEMENTAL BRIEFING

75.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant respectfully requests that it issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

**WHEREFORE**, Defendant requests that the above action pending before the Superior Court of the State of California for the County of San Diego be removed to the United States District Court for the Southern District of California.

DATED: October 2. 2023

KELLEY DRYE & WARREN LLP
Kimberly Carter
Ronnie Arenas

By:   /s/ Kimberly Carter
Kimberly Carter
Ronnie Arenas
Attorneys for Defendants
LABCORP PERI-APPROVAL AND
COMMERCIALIZATION, INC.; and
COVANCE MARKET ACCESS
SERVICES, INC.

  
# Table of Contents to Exhibits

| Exhibit | Page No. | Description |
| --- | --- | --- |
| A. | | True and correct copy of Plaintiff's Class Action Complaint, filed June 30, 2023 |
| B. | | True and correct copy of the Summons on Complaint, filed June 30, 2023 |
| C. | | True and correct copy of the Civil Case Cover Sheet, dated June 30, 2023 |
| D. | | True and correct copy of the Notice of Case Assignment and Case Management Conference (Civil), filed July 3, 2023 |
| E. | | True and correct copy of the Notice to Litigants re ADR Information, filed July 3, 2023 |
| F. | | True and correct copy of the Stipulation to Use ADR, filed July 3, 2023 |
| G. | | True and correct copy of the Proof of Substitute Service of Summons and Complaint, filed August 7, 2023 |
| H. | | True and correct copy of the Notice and Acknowledgment of Receipt - Civil to Covance Market Access Services, Inc., filed September 12, 2023 |
| I. | | True and correct copy of the Notice and Acknowledgment of Receipt – Civil to Labcorp Peri – Approval & Commercialization, filed September 12, 2023 |

4862-7984-7810v.5